**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

In re Application of

TOPTAL, LLC,

                     *Applicant.*

No. _____

## APPLICATION FOR THE ISSUANCE OF A SUBPOENA DUCES TECUM AND A SUBPOENA AD TESTIFICANDUM TO JANE LANHEE LEE

Pursuant to 28 U.S.C. § 1783, Toptal LLC hereby applies for the issuance of one Subpoena to Produce Documents and one Subpoena to Testify at a Deposition (collectively, the "Subpoenas"), both directed to witness Jane Lanhee Lee.[1]  Section 1783(a) empowers a federal court to issue a subpoena to a United States national who is in a foreign country, requiring the person to appear "before it or before a person or body designated by it" or to "produc[e] a specified document or other thing."  § 1783(a).  The subpoena should issue if the testimony or document production "is necessary in the interest of justice" and not otherwise possible to obtain.  *Id.*

Here, the Subpoenas seek discoverable information from Lee, a U.S. citizen currently based in Taiwan who works as an English-language reporter.  Lee worked for the defendant in an underlying defamation lawsuit (Bloomberg L.P.) until leaving the company two months ago in February 2026.  While at Bloomberg, Lee participated in the reporting giving rise to the Delaware Litigation and is, accordingly, a percipient fact witness with unique testimony essential to Toptal's case.  But because she is located abroad and refuses to testify since leaving Bloomberg, Toptal requires a federal § 1783 subpoena to procure her testimony and certain documents at this point.

---

[1] The proposed Subpoenas are attached hereto as **Exhibits 1 and 2**.

1

Obtaining Lee's testimony and documents is necessary in the interest of justice, and the information about Lee's own early role in Bloomberg's defamatory reporting is not available in any other way.  Accordingly, a subpoena should issue forthwith under § 1783.

## I.      BACKGROUND

The Subpoenas seek discoverable information for an underlying defamation suit captioned *Toptal, LLC v. Bloomberg, L.P*. No. N25C-01-256-FJJ and currently pending before the Delaware Superior Court (the "Delaware Litigation").

### A.      <u>The Delaware Litigation Underlying this Petition</u>

The Delaware Litigation, now deep into discovery, centers on an article, entitled "Battle Over Startup Leaves Early Investor with No Equity, $2.6 Million Legal Bill," (the "Defamatory Publication"), written by Bloomberg reporter Sarah McBride and published in April 2024.  Ex. 3, ¶¶ 1, 20 (Delaware Complaint).  The article misrepresented a dispute between Toptal and Denis Grosz—a former advisor and lender to Toptal, who became embittered by the terms of his deal and proceeded to plot to subvert and destroy Toptal.  Ex. 3., ¶¶ 21, 44-60.  Grosz's conduct sparked a successful lawsuit by Toptal against Grosz, with both the court and jury condemning Grosz for his tortious plot to harm Toptal while exonerating Toptal of wrongdoing.  Ex. 3, ¶¶ 61-76.  It was *Toptal* that had proven it was the innocent victim of *Grosz's* bad faith and malicious conduct.  Ex. 3, ¶¶ 72-75.  But those who read Bloomberg's article came away with an entirely different and false impression: that Toptal cheated Grosz.  Ex. 3, ¶¶ 95-109.  Toptal's lawsuit against Bloomberg followed.   Ex. 3.   Bloomberg moved to dismiss, asserting the "fair report privilege" and "substantial truth" defenses.  That motion was denied and Toptal's claims were allowed to proceed. *See Toptal, LLC v. Bloomberg, L.P., 2025 WL 2172609 (Del. Super. July 31, 2025).*

Discovery requests were first exchanged in September 2025 and currently, discovery is set to be substantially completed this summer.  Decl. ¶ 2.

2

**B.    The Witness at Issue: Jane Lanhee Lee**

Jane Lanhee Lee is a now-former Bloomberg reporter based in Taiwan.  Decl. ¶ 3. Bloomberg employed Lee between 2023 and February 2026, meaning that she was subject to deposition without the need for an international subpoena throughout much of the Delaware Litigation. *Id.* ¶ 4.  During that time, however, Bloomberg obfuscated her identity and involvement in the Defamatory Publication; for example, Bloomberg did not mention Lee in its response to Toptal's interrogatory seeking to identify all Bloomberg personnel who worked on the defamatory reporting. *Id.* ¶ 5.  As a result, Toptal was not initially aware of the extent of Lee's involvement and, accordingly, that Lee needed to be deposed. *Id.*   It was not until March 23 (after Lee left Bloomberg) that Toptal came to understand the extent of Lee's involvement when Bloomberg first produced communications to which she was a party.  *Id.* ¶ 6.

Even after Lee left the company, however, Bloomberg expressed a willingness to coordinate the deposition (without mentioning Lee was no longer a Bloomberg employee).  On March 30, Toptal requested dates for Lee's deposition, and Bloomberg did not raise the need for an international subpoena in response. *Id.* ¶ 7.  Nor was the subpoena issue raised on April 12, when Bloomberg first notified Toptal of Lee's new employment status and yet still indicated that it was actively working to obtain dates for Lee's deposition. *Id.* ¶ 8.[2]  It was not until April 22 that Bloomberg abruptly reversed course, telling Toptal it would have to obtain compulsory process to depose Lee, who was located abroad. *Id.* ¶ 9.  At that point, Toptal acted swiftly and determined that Lee is indeed a U.S. citizen subject to subpoena under § 1783. *Id.* ¶ 3.  This Petition follows.

---

[2] In this case, Bloomberg has arranged other former employee's depositions without the need for a subpoena. *Id.*

## II.    ARGUMENT

### A.    <u>Section 1783</u>

A federal court may issue a subpoena directed to a United States national who is in a foreign country under 28 U.S.C. § 1783(a).  The court can either require the person to appear "before it or before a person or body designated by it."  *Id.*  It can also "requir[e] the production of a specified document or other thing."  *Id.*  In a civil case, the subpoena should be issued if the testimony or document production "is necessary in the interest of justice" and "it is not possible to obtain [the witness's] testimony in admissible form without h[er] personal appearance or to obtain the production of the document or other thing in any other manner."  § 1783(a); *see also In Re Meta Platforms, Inc.*, 1-24-mc-00182 & 1-24-mc-00183 (D. Del.) (granting applications for subpoenas to U.S. citizens residing in Canada and Germany, respectively); *Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 525 (D. Colo. 2003) (§ 1783 subpoena issued to U.S. citizen in Germany); *Cadence Design Sys., Inc. v. Pounce Consulting, Inc.*, No. 19-05404, 2019 WL 11504668 at *4 (C.D. Cal. Sept. 26, 2019).

### B.    <u>Lee's testimony and documents are necessary in the interest of justice and are not available in any other form.</u>

Here, publicly available information shows that Lee is a U.S. citizen residing abroad in Taiwan, rendering her subject to § 1783 (Decl. ¶ 3) and Toptal's proposed subpoena otherwise meets the statutory requirements and comports with the law.

First, Lee's testimony and documents are necessary in the interest of justice.  While at Bloomberg, Lee participated in the reporting giving rise to the Delaware Litigation and is, accordingly, a key fact witness with information relevant to this case.  Decl. ¶¶ 4-6.  Because she is located abroad and refuses to testify voluntarily, Toptal requires a § 1783 subpoena to procure her testimony now.  *Id.* ¶ 9.  Moreover, her unavailability occurred through no fault of Toptal's;

she was a Bloomberg employee for much of the litigation and discovery period and Bloomberg belatedly notified Toptal of her employment status and refusal to voluntarily engage in discovery thereafter. *Id.* ¶¶ 4-5. And the burden to Lee would be slight because counsel is willing to travel to Taiwan or to convene the deposition via Zoom, so that Lee can appear remotely. **Ex. 1** at 1. Under these circumstances, the subpoenas are both necessary and in the interests of justice.[3]

Second, Lee's testimony about her own early role in the defamatory reporting is not available from others. As a percipient witness, Lee has her own unique recollections and reflections that cannot be obtained from any other source. And Bloomberg cannot produce documents that Lee took with her when she left the company, including those that were stored on Lee's personal devices (which Bloomberg reporters often use for newsgathering). *Id.* ¶ 10. Indeed, Lee (through Bloomberg) has demanded a subpoena if Toptal is to obtain any discovery from Lee at all. *Id.* ¶ 9. And § 1783 is the only vehicle to obtain that information before the close of discovery this summer (and in advance of trial). *See Cadence Design Sys.*, 2019 WL 11504668, at *3 ("there is urgency to Plaintiff's request that makes resort to the lengthy process of the Hague Convention an undesirable alternative").

Accordingly, Toptal's straight-forward request satisfies the § 1783(a) standard and this Petition should be granted.

---

[3] *See In re Three Arrows Capital, Ltd.*, 647 B.R. 440, 451-52 (S.D.N.Y. Bk. 2022) (interest of justice warranted issuance of subpoena, where witness had personal knowledge of debtor's assets, discovery sought likely was not obtainable via other means, and witness had not cooperated with informal discovery requests); *In re: Petrobras Sec. Litig.*, No. 14-CV-9662 (JSR), 2016 WL 908644, at *1 (S.D.N.Y. Mar. 4, 2016) (interest of justice warranted issuance of subpoena, where "[witness] was a member of [defendant's] Board of Directors from 2013 to 2015 and served on its Audit Committee" so there was "little doubt that he has knowledge of facts relevant to this case"); *Klesch*, 217 F.R.D. at 525 (interest of justice warranted subpoena where plaintiff offered nothing more than bald assertion that subpoena constituted harassment of witness and deposition might discover relevant information).

**C.**     **<u>The court should authorize service by email, pursuant to § 1783(b) and Rule 4(f)(3).</u>**

Finally, § 1783(b) specifically provides that service of the subpoena "shall be effected in accordance with the provisions of the Federal Rules of Civil Procedure relating to service of process on a person in a foreign country." And Rule 4(f) provides the procedure for serving an individual in a foreign country, which includes "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).

Courts have recognized that service by "other means" includes service by email and authorized it accordingly. *See, e.g., Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 342–44 (E.D.N.Y. 2021) (service by email to party in Germany acceptable under Rule 4(f)(3)); *Blackbird Cap. LLC v. Worth Grp. Cap., LLC*, No. 21-00037, 2022 WL 464234, at *2 (D. Utah Feb. 15, 2022) (authorizing service by email to individual in Canada). Accordingly, pursuant to Rule 4(f)(3), Toptal requests that the Court also authorize service via email using the business email address that Lee currently lists on her LinkedIn profile, "jane@quantumjane.co," Decl. ¶ 11 & **Ex. 4**, or any other email address that Toptal reasonably comes to believe she is using.

### III.     CONCLUSION

Accordingly, Toptal respectfully requests that the Court grant this Application and enter an order requiring the Clerk issue the Subpoenas attached hereto as **Exhibits 1 and 2** and to authorize service via email. A proposed order is filed herewith for the Court's consideration.

Dated: May 5, 2026

OF COUNSEL:

Megan L. Meier
Mark R. Thomson
Devin K. Bolger
MEIER WATKINS PHILLIPS PUSCH LLP
919 18th Street NW, Suite 650
Washington, DC 20006
Tel: (202) 318-3655
megan.meier@mwpp.com
mark.thomson@mwpp.com
devin.bolger@mwpp.com

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Toptal LLC*

7